The STATE of Ohio, Appellee,

v.

HATCHER, Appellant.

[Cite as *State v. Hatcher* (1996), 108 Ohio App.3d 628.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940778.

Decided Jan. 17, 1996.

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for appellee.

*A. Kay Stevens*, for appellant.

SHANNON, Judge.

This cause came on to be considered upon the appeal, this court having granted reconsideration of its prior decision entered on September 6, 1995, having set aside that decision and judgment, and having ordered and received from counsel supplemental memoranda of law discussing the reconciliation of Evid.R. 609(F) and 806. This court comes now to consider the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, and the briefs and arguments of counsel.

Defendant-appellant Terry L. Hatcher ("appellant") appeals from his conviction on two counts of aggravated robbery following a jury trial. Appellant's previous conviction and sentence on these same counts were appealed, with this court reversing and remanding for a new trial. In the current appeal, appellant raises three assignments of error, all of which concern certified copies of prior felony convictions of Eddie Morton, an unavailable witness. He argues first that the trial court erred when it allowed the jury to have certified copies of Morton's felony convictions during its deliberations when the copies had not been admitted into evidence. Appellant next contends that he was denied effective assistance of counsel because his counsel failed to object to the introduction of the certified copies of the prior convictions and their use as exhibits, as well as to the

prosecutor's reference to Morton's credibility in closing argument. Last, appellant argues that he was denied a fair trial because the prosecutor referred to the fact that there had been a prior trial and commented on Morton being a felon.

Raymond Hammond testified at trial that on January 13, 1993, two men and a woman attacked and robbed him while he was sitting in his taxi after delivering a fare. According to Hammond, they chased him and one of the men stabbed him three times. He subsequently identified appellant as his assailant from a photographic array.

Morton testified as a defense witness at appellant's first trial. According to Morton's testimony, he and appellant were standing on a corner drinking beer at 2:30 a.m. when Hammond's taxi pulled up and they witnessed a drug transaction between Hammond and a man known only as "Steve." They saw Steve and Hammond drop a piece of crack cocaine in the taxi. When it could not be found, Steve went to a nearby apartment building and returned with a female known as "Dimples" and another man known as "X." Failing to find the cocaine, Steve and X proceeded to chase Hammond and, upon catching him, beat him. On direct examination, Morton testified that X stabbed Hammond one time. On cross-examination he denied seeing any stabbing. Morton also denied during cross-examination that he had been convicted of any felony offenses or any offenses in the last ten years that would involve dishonesty.[1]

Morton could not be found to testify at appellant's second trial. Consequently, his testimony was read to the jury at appellant's request pursuant to Evid.R. 804(A)(5) and (B)(1). Prior to the reading of Morton's testimony, the prosecutor stated that he was attempting to obtain certified copies of Morton's felony convictions to use in rebuttal. Defense counsel stated, "That's fine. We have no objection to that." After the testimony was read, the trial court asked if the defense was going to object to the admission of the certified copies, to which defense counsel replied, "No." At that juncture, the trial court determined that the certified copies of Morton's felony convictions would be admitted the next day if the prosecutor was successful in obtaining them.

In his first assignment of error, appellant argues that the certified copies of Morton's prior felony convictions were never admitted into evidence. The record fails to support this assertion. As set forth above, the records were admitted upon being presented to the court. Therefore, we overrule appellant's first assignment of error.

---

1. Our review of the records of Morton's felony convictions shows that he was sentenced for aggravated burglary on October 8, 1982, and for sexual battery on August 24, 1981. Both of these convictions occurred more than ten years before December 15, 1993, the date Morton testified.

■ We next address appellant's third assignment of error, in which he argues that he was denied a fair trial when the prosecutor made comments on facts not properly admitted into evidence. The specific comments at issue concern Morton's status as a felon and the fact that appellant had had a previous trial. As to appellant's assertion concerning the prosecutor's reference to the first trial, the record demonstrates that after the prosecutor asked Hammond, "And then on July 21st and July 22nd, you testified at the first trial of this matter in front of Judge Ann Marie Tracey; is that correct?", there was no objection. Following the conclusion of Hammond's testimony, and out of the hearing of the jury, defense counsel stated he did not want to object, but was concerned about the mention of the prior trial. The trial court stated that the court and counsel would "make an informal agreement to try and keep that out of it unless we discuss it first."

■ We do not condone referring to the previous trial where we have remanded a cause for a new trial. Under the facts of this case, however, where no objection was made in a timely manner to allow the trial court to instruct the jury or to strike the question, and where defense counsel implicitly, if not explicitly, agreed to continue without action by the trial court, we conclude that any error has been waived. Moreover, we conclude that the question referring to the prior trial did not constitute plain error as defined *infra*.

Next, having already concluded that Morton's felony convictions were admitted, we must now determine whether such admission was error in order to address adequately appellant's claim that he was denied a fair trial. Consequently, analysis is circumscribed by the Rules of Evidence relating to the admission of the record of a prior conviction for the purpose of impeaching the credibility of an unavailable declarant.

Evid.R. 609(F) states that a witness may be impeached by a prior conviction only by testimony of the witness or by public record shown to the witness, as indicated by the dissent. There is a facial disparity, however, between that rule and Evid.R. 806, which states:

"When a hearsay statement, or a statement defined in Rule 801(D)(2), (c), (d), or (e), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if the declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay statement, is not subject to any requirement that he may have been afforded an opportunity to deny or explain."

This disparity, however, does not result in the latter rule emasculating the former. Nor does it necessarily demonstrate that such was the intention of the

authors of the rules, *viz.*, the Supreme Court of Ohio. If these conclusions are in error, the Supreme Court of Ohio should clarify the discrepancy, particularly upon the facts in this case.

The prosecution concedes that Morton's testimony from the first trial is hearsay, but submits that it is admissible as an exception to the hearsay rule under Evid.R. 804(B)(1). The critical provision of Evid.R. 806 is that the credibility of the declarant (here the absent witness, Morton) may be attacked and the attack supported by any evidence (here Morton's record) admissible to impeach credibility as if the declarant had testified as a witness.

While not legally authoritative, the Staff Note to Evid.R. 806 is enlightening:

"[T]he rule provides that the hearsay declarant need not have been given 'an opportunity to deny or explain' his inconsistent statement; hence it is not necessary to 'lay a foundation' before an inconsistent statement is introduced to impeach the hearsay statement. Clearly, under the rule the hearsay statement may be impeached by an inconsistent statement even though the hearsay statement is former testimony introduced into evidence and even though there was no attempt to impeach the hearsay declarant by an inconsistent statement at the time of taking the former testimony.

"The rule is consistent with the majority and more modern rule in the United States. See *McCormick* § 37 (2d ed. 1972)."

Thus, much less than being plain error, the admission of Morton's record to impeach his exculpatory statements was not error at all.

Fed.R.Evid. 806 is the analog to our Evid.R. 806. The federal rule was interpreted by the United States Court of Appeals for the Seventh Circuit in *United States v. Noble* (C.A.7, 1985), 754 F.2d 1324. Noble was convicted of conspiracy to distribute counterfeit currency and, on appeal, contended, *inter alia*, that the use of his prior counterfeiting conviction to impeach his credibility prejudiced the jury.

In Judge Coffey's opinion it is noted that:

"The evidence discloses that in early 1980, the defendant Noble contacted a Bennett Handelman, a social and business acquaintance and asked Handelman if he would participate in a scheme to manufacture and distribute counterfeit Federal Reserve Notes. Handelman agreed with Noble to act as a partner in the counterfeiting scheme and during the months that followed the two planned the counterfeit operations including frequent telephone communications." (Footnote omitted.) *Id.* at 1326.

"[O]n December 21, 1981, a Secret Service agent in Chicago had Bennett Handelman's wife place a call to the defendant Noble. During the conversation

the Secret Service agent posed as an interested buyer who wanted to continue the operation. During the conversation, the defendant made four or five exculpatory statements and denied any knowledge of Handelman's involvement in the counterfeiting scheme. At trial, Noble's attorney presented the recorded conversation as part of his defense. The government introduced and the district court allowed Noble's prior counterfeiting conviction into evidence to impeach Noble's credibility as to his claimed lack of counterfeiting knowledge under the Federal Rules of Evidence Rules 806 and 609(a)(2)." (Footnote omitted.) *Id.* at 1327–1328.

In ruling on the appellant's claim of error based on the prosecution's use of the record of his prior conviction, Judge Coffey wrote:

"The defendant next claims that the admission of his prior conviction for counterfeiting was so prejudicial as to merit reversal of his conviction. At trial, Noble's defense counsel introduced the taped conversation between Agent Parmalee and the defendant wherein the agent posed as one of Ben Handelman's counterfeit distributors. During the conversation, the agent attempted to convince Noble to continue with the counterfeiting operation even though Handelman had been arrested; however, Noble denied on four or five occasions any knowledge of counterfeiting operations or of his prior counterfeiting activities with Handelman. The government then moved to impeach the defendant's statements with the introduction of the defendant's prior counterfeiting conviction. The district court allowed the prior conviction be to received into evidence pursuant to Fed.R.Evid. Rules 806 and 609(a)(2).

"When Noble's counsel introduced the taped conversation into evidence containing the defendant's exculpatory hearsay statements, the defense counsel made the defendant's credibility an issue. See *United States v. Lawson*, 608 F.2d 1129, 1130 (6th Cir.1979) (proper to impeach defendant when his counsel brought out on cross-examination of a government agent the defendant's denials of any involvement in the counterfeiting scheme); see also *United States v. Bovain*, 708 F.2d 606, 613 (11th Cir.), cert. denied, 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 724 (1983). Federal Rules of Evidence Rule 806 provides that when a hearsay statement has been admitted into evidence, the credibility of the declarant may be attacked by evidence 'which would be admissible for those purposes if declarant had testified as a witness.' The Advisory Committee Notes to the proposed rule state that:

" 'The declarant of a hearsay statement which is admitted into evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified. See Rules 608 and 609 * * *.' " *Id.*, 754 F.2d at 1330–1331.

It must be noted that there is no analog to Evid.R. 609(F) in the Federal Rules of Evidence. Despite the existence of the arguable conflict before Evid.R. 806 and 609(F) confronting this court in the case *sub judice*, *Noble, supra*, is reasonable support for the use of Evid.R. 806 to warrant admission of Morton's record.

■ Even if the admission of Morton's record were error, it is clear that such error does not rise to the level of plain error. Very recently, this court, in deciding *State v. Jacobs* (Dec. 13, 1995), Hamilton App. No. C–940891, unreported, 1995 WL 734037, made a declaration which summarizes the predicates of this opinion:

"It is well established that the failure to object to an error in a criminal proceeding precludes the issue from being raised on appeal unless it rises to the level of plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 13 [3 OBR 360, 360–361], 444 N.E.2d 1332, 1333. An alleged error does not rise to the level of plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Wickline* (1990), 50 Ohio St.3d 114, 120, 552 N.E.2d 913, 920, certiorari denied (1990), 498 U.S. 908, 111 S.Ct. 281 [112 L.Ed.2d 235]. Furthermore, 'the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice.' *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 227 [4 OBR 580, 580–581], 448 N.E.2d 452, 453.

"In the present case, we cannot say that but for the error, the outcome of the trial clearly would have been otherwise. The evidence was sufficient to support the conviction and the jury's decision came down to which witnesses it believed. This case simply does not involve the type of exceptional circumstances which would justify a finding of plain error."

The Ohio Supreme Court places stringent limitations upon the invocation of plain error. The record does not demonstrate that the admission of the record of Morton's past criminal behavior changed the outcome of the case or, in other words, that but for the presence of the record as evidence to be contemplated by the jury, the outcome of the trial would have been different. The totality of the evidence leads to a contrary conclusion. Those propositions and conclusions must be adhered to and, thus, appellant's third assignment of error is overruled.

■ In his second assignment of error, appellant contends that he was denied effective assistance of counsel because his attorney did not object to the introduction and admission of Morton's prior felony convictions or to the prosecutor's comment concerning Morton's credibility. Based on our disposition of appellant's third assignment of error, we conclude that no basic predicate exists upon which

appellant's second assignment of error may rest. Thus, because appellant's second assignment of error has no merit, we overrule it.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

Marianna Brown Bettman, J., concurs separately.

Doan, P.J., dissents.

Raymond E. Shannon, J., retired, of the First Appellate District, sitting by assignment.

Marianna Brown Bettman, Judge, concurring separately.

The central issue in this appeal involves the proper use of the prior felony convictions of defense witness Eddie Morton, who was present during the first trial, but absent from the second. At the second trial, Morton's testimony from the first trial was read into evidence, following which certified copies of Morton's felony convictions were admitted into evidence, presumably for the purpose of impeaching or rebutting Morton's testimony. Defense counsel did not object to this.

Upon reconsideration, I do not believe that an attempted reconciliation of Evid.R. 806 and 609(F) is necessary to resolve this case. I again conclude that the admission of certified copies of Morton's felony convictions into evidence was error, but solely for the reason noted in footnote two of the September 6, 1995 decision of this court, which has been set aside due to our granting this reconsideration of that decision.[2] The *only* record evidence before the court discloses that Morton had two felony convictions which were more than ten years old and, hence, not properly used for impeachment purposes at all. Evid.R. 609(B). The state now tries to argue that Morton's records were properly used because "the state has contacted the Department of Rehabilitation and Corrections and learned that Morton was released from parole on September 9, 1988," thus bringing them within the time limits of Evid.R. 609(B).[3] It is wholly unacceptable for the state now to try to bring in evidence *dehors* the record in a motion for reconsideration in order to save the use of documents which, on their face, and on the record before the trial court should not have been allowed as

---

2. The same footnote appears as footnote one in the lead opinion in this appeal.

3. Evid.R. 609(B) states that "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of probation, or shock probation, or parole or shock parole imposed for that conviction, whichever is the later date * * *."

impeaching documents. See *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus. However, notwithstanding this error, and upon reconsideration, I agree with the lead opinion that under the strict standard of the plain error rule, I cannot say that the outcome of this trial probably would have been different.

DOAN, Presiding Judge, dissenting.

My inability to agree with my colleagues stems from a single issue: Evid.R. 609.

The lead opinion declares that the trial court did not commit any error. I disagree. Evid.R. 609, which allows for impeachment of a witness by evidence of his prior criminal conviction, affords the trial court "broad discretion in determining the extent to which testimony will be admitted." *State v. Wright* (1990), 48 Ohio St.3d 5, 8, 548 N.E.2d 923, 926. The means by which to exercise this discretion, however, is specified by the rule. Evid.R. 609(F) clearly sets forth the permissible methods of proof of such convictions:

"When evidence of a witness's conviction of a crime is admissible under this rule, the fact of the conviction may be proved *only* by the testimony of the witness on direct or cross-examination, or by public record shown to the witness during his or her examination. If the witness denies that he or she is the person to whom the public record refers, the court may permit the introduction of additional evidence tending to establish that the witness is or is not the person to whom the public record refers." (Emphasis added.)

"As a rehabilitative device, customary practice generally permits explanations by the witness of extenuating circumstances of the conviction." Weissenberger's Ohio Evidence 1994 Courtroom Manual (1993) 192. Obviously, the rule contemplates a witness being present at the time of impeachment and not, as in this case, the use of mere recorded testimony. In this case, the copies of Morton's prior convictions were not shown to him because he was unavailable at the time of appellant's second trial. I would conclude that the trial court erred in admitting the record of Morton's prior convictions where he was not present for the impeachment as required by Evid.R. 609.

This conclusion, however, does not terminate my analysis. Because appellant did not object to the admission of Morton's prior felony convictions, the error has been waived unless it constitutes plain error. See *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332; Crim.R. 52(B). To constitute plain error, it must appear from the record not only that an error occurred, but that except for that error, the outcome of the trial court would have been different. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804. The invocation of plain error should occur "only under exceptional circumstances in

order to prevent a manifest miscarriage of justice." *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 227, 4 OBR 580, 581, 448 N.E.2d 452, 453.

Under the facts of the instant case, I am convinced that the substantial rights of appellant were so adversely affected by the admission of the record of Morton's prior convictions as to undermine the fairness of the trial and to affect its outcome. My conclusion is based on the fact that Morton provided testimony that appellant was not involved in the robbery and stabbing of Hammond. He provided identification of the persons who were involved. The fact that his credibility was impeached in contravention of Evid.R. 609(F), without his being available to admit or deny that the prior convictions referred to him or to rehabilitate himself, undermined the fairness of the proceedings.

Therefore, I would sustain appellant's third assignment of error and would reverse the judgment of the trial court and remand this cause for further proceedings.