[Cite as *State v. Corcoran*, 2017-Ohio-7084.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160627 |
| | | TRIAL NO. B-1501302-A |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N.* |
| APRIL CORCORAN, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 4, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Brian T. Goldberg*, for Defendant-Appellant.

**DETERS, Judge.**

{¶1}  Defendant-appellant April Corcoran appeals her convictions for complicity to rape, corrupting another with drugs, and endangering children, stemming from a four-month period where Corcoran allowed her codefendant, Shandell Willingham, to sexually abuse Corcoran's then-11-year-old child, in exchange for heroin.  Corcoran also furnished her child with heroin during this time.  Because we determine that Corcoran's assignments of error challenging the nature of her guilty pleas and her sentence are without merit, we affirm the judgment of the trial court.

### Facts and Procedural History

{¶2}  Corcoran, a heroin addict, lived in a tent in the backyard of her parents' home.  Corcoran's two children lived inside the home with Corcoran's parents.  Corcoran did not have stable employment, and when Corcoran could not pay Willingham, her heroin dealer, she engaged in sexual acts with him, and allowed him to take pictures and videos of her during these acts.  Corcoran also brought others to Willingham for his sexual gratification.  In February of 2014, Corcoran began introducing one of her children to Willingham.  At first, Corcoran took her child to Willingham so that he could masturbate while watching the child, and Corcoran received heroin in return.  Corcoran then began leaving Willingham and her child alone at Willingham's apartment.  According to a detailed interview of the child by police, Willingham raped the child multiple times over several months.  Willingham penetrated the child anally, and he forced the child to perform fellatio and cunnilingus.  In exchange for offering up the child to Willingham, Corcoran received heroin.

{¶3}   The abuse Corcoran's child suffered came to light on a visit that Corcoran's children had with their father and stepmother.  An investigation ensued, leading to the arrest and joint indictment of Corcoran and Willingham.

{¶4}   The joint indictment against Corcoran and Willingham contained 40 counts related to rape, complicity to rape, gross sexual imposition, human trafficking, pandering sexually-oriented matter involving a minor, endangering children, and drug charges.  Corcoran pleaded guilty to counts 2, 4, 6, 8, 25, and 28, as well as the human-trafficking charges, in exchange for dismissal of the other counts.  Counts 2, 4, 6, and 8, the complicity-to-rape charges, charged Corcoran with transporting her child to Willingham and allowing him to perform anal intercourse on the child, insert his tongue in the child's anus, perform cunnilingus on the child, and force the child to perform fellatio—all in exchange for heroin.  Count 25 charged Corcoran with corrupting another with drugs by furnishing heroin to the child.  Count 28 charged Corcoran with child endangering under R.C. 2919.22(B)(2), which prohibits torture or cruel abuse of a child.

{¶5}   The trial court accepted Corcoran's guilty pleas and held a sentencing hearing.  Over Corcoran's objection, the trial court declined to merge the child-endangering charge with the other counts for purposes of sentencing, however, the trial court merged the trafficking charges.  The trial court sentenced Corcoran to an aggregate prison term of 51 years to life.  Corcoran appeals.

### Corcoran Challenges Her Guilty Pleas

{¶6}   We address Corcoran's third assignment of error first, in which she argues that her guilty pleas were not knowing, voluntary, and intelligent, because the

trial court failed to determine that Corcoran understood that most of the charges against her carried a mandatory prison sentence.

{¶7} Before a trial court can accept a guilty plea in a felony case, the trial court must "[d]etermin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." Crim.R. 11(C)(2)(a). The requirement in Crim.R. 11(C)(2)(a) that a trial court inform the defendant that he or she is not eligible for probation or community control does not involve constitutional rights, thus, the trial court need only substantially comply with this requirement. *State v. Maggard*, 1st Dist. Hamilton No. C-100788, 2011-Ohio-4233, ¶ 5, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Substantial compliance with Crim.R. 11 means that " 'under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving.' " *State v. Dean*, 1st Dist. Hamilton No. C-150478, 2016-Ohio-3076, ¶ 5, quoting *Nero* at 108. Furthermore, even if a trial court failed to substantially comply with the nonconstitutional requirements of Crim.R. 11(C), a defendant seeking to void pleas as unknowing, unintelligent, or involuntary must show prejudice— meaning that, but for the trial court's failure to substantially comply with the rule, the plea would not have been made. *Dean* at ¶ 5, citing *Nero*.

{¶8} In *State v. Nero*, the Ohio Supreme Court held that the trial court substantially complied with Crim.R. 11 when accepting the defendant's guilty plea to rape, even though the trial court failed to inform the defendant that he was ineligible for probation, because the record indicated that the defendant knew he was ineligible

4

for probation. At the plea hearing, defendant's counsel told the trial court that the defendant knew he would be incarcerated, and requested "some time to straighten out [his] affairs." *Nero* at 108. The *Nero* court determined that the totality of the circumstances indicated that the defendant knew he was ineligible for probation, and, therefore, was not prejudiced by the trial court's failure to comply with Crim.R. 11(C)(2)(a). *See State v. Stewart*, 51 Ohio St.2d 86, 92, 364 N.E.2d 1163 (1977) (holding that the trial court substantially complied with Crim.R. 11(C)(2)(a) when accepting the defendant's guilty plea to murder, even though the trial court did not specifically inform the defendant that he would be ineligible for probation, because the trial court informed him of the maximum penalty of an indefinite term of 15 years to life in prison); *compare State v. Farley*, 1st Dist. Hamilton No. C-1011478, 2002-Ohio-1142 (holding that the trial court failed to substantially comply with Crim.R. 11(C)(2)(a) because it accepted the defendant's guilty plea to rape without informing him that he would be ineligible for probation or community control, and because the defendant's plea form indicated that a prison term was not mandatory for the rape charge).

{¶9} During Corcoran's plea colloquy, the trial court stated:

> For the felonies -- the type of felonies you are being charged with, the felonies of the first degree, the potential penalty is 10 years to life in prison on Counts 2, 4, 6, and 8, and a maximum fine on each in the amount of $20,000. * * * On Count 25, which is a felony of the second degree, there is a potential sentence of two to eight years and a maximum penalty in the amount of

5

$15,000. * * * On Count 28, a felony of the third degree. There's a potential sentence of nine to 36 months at the Ohio Department of Corrections and a maximum fine in the amount of $10,000.

{¶10} Corcoran argues that the trial court's statement during its colloquy did not inform Corcoran that prison sentences were mandatory, and that she would be ineligible for community control, and therefore the trial court did not comply with Crim.R. 11. Although the trial court did not affirmatively tell Corcoran that she would be ineligible for community control as a result of her guilty pleas, the trial court did inform Corcoran of the maximum penalties, which included ten years to life in prison for the more serious first-degree rape charges. Moreover, the plea form that Corcoran signed indicated that counts 2, 4, 6, 8, and 25 carried mandatory prison terms. Corcoran initialed by the paragraph in the plea form, which provided, "I understand the maximum penalty as set out above, and any mandatory prison term during which I am not eligible for judicial release * * *." Finally, Corcoran's counsel stated at the plea hearing that Corcoran "wish[ed] to take responsibility for her actions. She does not wish to have her daughter go through further trauma by having to testify at trial. She's been very adamant about that with me. And she knows that a sentence that amounts to life in prison is a very realistic possibility."

{¶11} We determine that under the totality of the circumstances Corcoran subjectively understood that prison was mandatory, and Corcoran was not prejudiced by the trial court's failure to technically comply with Crim.R. 11(C)(2)(a).

{¶12} Corcoran's contention that the trial court erred in accepting her guilty pleas lacks merit. We overrule Corcoran's third assignment of error.

## Allied Offenses

{¶13} In her first assignment of error, Corcoran argues that the trial court erred by failing to merge the child-endangering charge, count 28, with either the complicity-to-rape counts or with the corrupting-another-with-drugs charge, because the offenses constituted allied offenses of similar import subject to merger under R.C. 2941.25. Count 28 of the indictment alleged that Corcoran recklessly tortured or cruelly abused her child from February 2014 to June 2014, in violation of R.C. 2919.22(B)(2).

{¶14} R.C. 2919.22(B)(2) prohibits torture or cruel abuse of a person under 18 years old. The statute does not define "torture" or "cruel abuse," however, courts have defined "torture" as used in the child-endangering statute as " 'the infliction of severe pain or suffering (of body or mind)[.]' " *State v. Wainscott*, 12th Dist. Butler No. CA2015-07-056, 2016-Ohio-1153, ¶ 24, quoting *State v. Surles*, 9th Dist. Summit No. 23345, 2007-Ohio-6050, ¶ 5. "Abuse" has been defined as " 'ill-use, maltreat; to injure, wrong or hurt.' " *Wainscott* at ¶ 24, quoting *Surles* at ¶ 5. "Cruelly" means to " 'demonstrate indifference to * * * another's suffering,' " or to treat " 'severely, rigorously, or sharply.' " *Wainscott* at ¶ 24, quoting *State v. Brown*, 9th Dist. Summit No. 23737, 2008-Ohio-2956, ¶ 12. The 1973 Legislative Service Commission Notes indicate that R.C. 2919.22(B) deals with "actual physical abuse of a child," and that such abuse may inhibit a child's ability to learn and develop because of the "repeated punishment inflicted."

{¶15} Because Corcoran raised an allied-offense argument to the trial court, and the trial court made a merger determination, this court applies a de novo standard of review. *See State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983

N.E.2d 1245, ¶ 28 ("An appellate court should apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination.").

{¶16} Whether two or more offenses constitute allied offenses of similar import subject to merger under R.C. 2941.25 requires a three-step analysis of the conduct, animus, and import. *See State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus. "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus. The defendant bears the burden of establishing entitlement to merger under R.C. 2941.25. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

{¶17} Corcoran takes issue with the first *Ruff* prong—dissimilar import—and argues that this case involves only one victim, and that no separate, identifiable harm exists to support her child-endangering conviction. *See Ruff* at paragraph two of the syllabus ("[t]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable."). Specifically, Corcoran relies on the bill of particulars, which states that the child-endangering charge is based upon "Corcoran and Willingham repeatedly sexually assaulting [Corcoran's child] over the course of several months, which caused serious physical harm to the child by means of physical assault and mental anguish."

{¶18} Although Corcoran's allied-offense argument addresses dissimilar import and ignores the other two *Ruff* factors, separate animus and separate conduct, this court can begin an allied-offense analysis with any one of these factors. *See State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 83. Therefore, we will begin our analysis with separate conduct.

{¶19} The material provided to the trial court at sentencing and contained in this record demonstrates that Corcoran's actions in facilitating her child's sexual assaults extend beyond the multiple rape offenses and the drug offense to which Corcoran pleaded guilty. The record shows that Corcoran took her child with her to a Target store where they met Willingham, and Corcoran left her child in the car while Corcoran used heroin, at which point Willingham masturbated. On multiple occasions, Corcoran brought her child to Willingham's apartment and left to get high, then Willingham either masturbated while watching Corcoran's child, or he forced the child to masturbate him. Willingham also touched the child's breasts on more than one occasion. Furthermore, Willingham further sexually exploited the child by videotaping and photographing her during several of these assaults. This eventually led to the rapes as charged in the indictment. The repeated sexual exploitation Corcoran's child endured, which was made possible only by Corcoran, the victim's own mother, demonstrates torture or cruel abuse of Corcoran's child as those terms are used in the child-endangering statute, even without Corcoran's conduct in permitting Willingham to rape her child and in furnishing her child with heroin.

{¶20} Therefore, we determine that the child-endangering offense and the complicity-to-rape offenses and the corrupting-another-with-drugs offense were

committed separately, and they are not subject to merger under R.C. 2941.25. We overrule Corcoran's first assignment of error.

## Excessive Sentences

{¶21} In her second assignment of error, Corcoran argues that the trial court erred by imposing consecutive prison terms, and by imposing an aggregate sentence of 51 years to life in prison.

{¶22} R.C. 2953.08(G)(2) governs appellate review of felony sentences. This court will only modify or vacate a sentence under R.C. 2953.08(G)(2) if it clearly and convincingly finds that either the record does not support the mandatory sentencing findings or the sentence is otherwise contrary to law. *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.).

{¶23} A trial court must consider certain statutes when sentencing a felony offender, including R.C. 2929.11, the purposes and principles of felony sentencing, and R.C. 2929.12, the seriousness and recidivism factors. A trial court need not make specific findings under R.C. 2929.11 and 2929.12, because this court presumes these statutes were considered, in the absence of an affirmative demonstration by the defendant to the contrary. *State v. Hendrix*, 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, ¶ 51.

{¶24} R.C. 2929.14(C)(4) governs consecutive sentences, and a trial court must make certain findings under that statute before imposing consecutive sentences. *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. A trial court need not provide reasoning to support its consecutive-sentencing findings, as long as the record contains evidence to support the findings. *State v. Ruff*, 1st Dist. Hamilton Nos. C-160385 and C-160386, 2017-Ohio-1430, ¶

20, citing *Bonnell* at ¶ 29 and syllabus. Under R.C. 2929.14(C)(4), the trial court must find that (1) consecutive sentences are necessary either to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the defendant poses to the public, and (3) relevant to this appeal, at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of the offender's conduct.

{¶25} Corcoran argues that the trial court erred by imposing consecutive sentences. Specifically, Corcoran argues that she was not the principal offender with regard to the rape charges, she took responsibility for her crimes by pleading guilty, she had no criminal history, and a doctor testified at her sentencing hearing that she suffers from opioid-use disorder.

{¶26} In this case, the trial court complied with R.C. 2929.14(C)(4) by making the consecutive-sentencing findings on the record at the sentencing hearing and in the sentencing entry. *See Bonnell* at syllabus. The trial court further explained at the sentencing hearing that it had seen many addicts, but none where an addict had victimized his or her child in this manner. The trial court also noted the extreme and ongoing harm caused to Corcoran's child by Corcoran's actions, as detailed in the victim-impact statements. Moreover, as the trial court stated, the child's mother, who should be the child's "first line of defense," threw her child "under a bus * * * to get high."

11

{¶27} Given the shocking severity of Corcoran's conduct, particularly the harm suffered by her child, the victim, the record supports the mandatory sentencing findings, and is not otherwise contrary to law. *See White*, 2013-Ohio-4225, 997 N.E.2d 629, at ¶ 11.

{¶28} We now turn to Corcoran's argument that her aggregate sentence amounts to cruel and unusual punishment. As a general rule, a sentence that falls within an appropriate statutory range cannot amount to cruel and unusual punishment. *State v. Bell*, 2015-Ohio-1711, 34 N.E.3d 405, ¶ 66 (1st Dist.), citing *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69, 203 N.E.2d 334 (1964). Furthermore, an aggregate sentence does not amount to cruel and unusual punishment " '[w]here none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses.' " *Bell*, quoting *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, syllabus.

{¶29} The prison terms imposed by the trial court fell within valid statutory ranges. As to counts 2, 4, 6, and 8, the complicity-to-rape offenses, the trial court imposed indefinite prison terms of ten years to life. A complicitor "shall be prosecuted and punished as if he were a principal offender." *See* R.C. 2923.03(F). Rape of a child less than 13 years old under R.C. 2907.02(A)(1)(b) is punishable by a prison term or term of life imprisonment. *See* R.C. 2907.02(B). In this case, the court was authorized to impose an indefinite prison term of a minimum term of ten years and a maximum term of life imprisonment on the complicity-to-rape charges. *See* R.C. 2971.03(B)(1)(a).

{¶30} Count 25, corrupting another with drugs under R.C. 2925.02(A)(4)(a), in this instance is a second-degree felony. *See* R.C. 2925.02(C)(1)(a). A second-

degree felony is punishable by two, three, four, five, six, seven, or eight years in prison, and the trial court imposed an eight-year prison term. *See* R.C. 2929.14(A)(2). Count 28, endangering children under R.C. 2919.22(B)(2), is a third-degree felony punishable in this instance by a prison term of nine, 12, 18, 24, or 36 months. *See* R.C. 2919.22(E)(3); R.C. 2929.14(A)(3)(b). The trial court sentenced Corcoran to 36 months in prison on count 28.

{¶31} Corcoran's sentences are within the appropriate statutory ranges for her offenses, and for the reasons stated by the trial court at the sentencing hearing, the individual sentences are not grossly disproportionate to their respective offenses. Thus, the aggregate prison term of 51 years to life resulting from the imposition of consecutive sentences does not constitute cruel and unusual punishment.

{¶32} We overrule Corcoran's second assignment of error.

## Conclusion

{¶33} In conclusion, we determine that Corcoran's assignments of error challenging the nature of her pleas and her sentences lack merit. The judgment of the trial court is affirmed.

Judgment affirmed.

CUNNINGHAM, P.J., and ZAYAS, J., concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.