[Cite as *State v. Summerlin*, 2017-Ohio-7625.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160539 |
| | | TRIAL NO. B-1405335 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| GREG SUMMERLIN, | : | |
| | | |
| Defandant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 15, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*William F. Oswalt Jr.*, for Defendant-Appellant.

**CUNNINGHAM, Presiding Judge.**

{¶1}  Raising seven assignments of error, defendant-appellant Greg Summerlin appeals from his convictions, following a jury trial, for the aggravated murder of Wynton Burton, and the attempted aggravated murder of Wayne Walker.  We find none of the assignments of error to have merit and affirm the trial court's judgment.

{¶2}  On the evening of September 11, 2014, Allen Grace saw Summerlin, his companion Priest Huffaker, and another person milling about a common area in the Winton Terrace neighborhood of Cincinnati.  Summerlin, whose street name was "Joker," and Huffaker approached Burton and Walker.  Walker had known "Joker" and Priest for over a year.  He saw that Summerlin was armed with a .357-caliber revolver, and Huffaker with a semiautomatic pistol. Burton, too, knew Summerlin. Three weeks previously, Burton had told his father that Summerlin had threatened him.

{¶3}  Burton owned a semiautomatic pistol with an iridescent "rainbow" finish. Summerlin and Huffaker asked to see it. Burton refused.  Within minutes, as Walker told the jury, Summerlin drew his revolver and fired two rounds into Burton, and then two more as he stood over Burton's supine form.  As Walker, standing nearby, ran to aid Burton, he was shot in the neck.  He saw Summerlin take Burton's pistol.  It was never recovered.

{¶4}  Walker then fled for his life.  He heard Summerlin yell to Huffaker, "Finish him off."  Though Huffaker shot Walker eight times, Walker was able to stumble into the street where he was found by a patrolling Cincinnati police officer.

{¶5}  Walker told paramedics summoned to aid him that "Joker" had shot Burton.  Burton died at the scene.  Among other items, police investigators found Huffaker's cellular telephone, semiautomatic-pistol shell casings, and a box of .357 ammunition bearing Summerlin's fingerprints at the scene.

{¶6}     Subsequent investigation led the police to access Summerlin's Facebook profile page and cellular telephone records from which they confirmed that Summerlin was "Joker," that he carried a handgun, and that he associated with Huffaker. The phone records placed Summerlin near the crime scene on the night Burton was killed. Over the next few days, Summerlin texted his associates that there were warrants for his arrest, that he was "hot," and that they should not open their doors to any unknown persons. While still a fugitive, Summerlin spoke on the telephone with an associate, Dathan Hall, then incarcerated in the Hamilton County Justice Center, about arranging "cheese," or hush money for Walker to buy his silence. Summerlin was ultimately arrested in northern Hamilton County.

{¶7}     In a six-count indictment, Summerlin was charged with the aggravated murder, murder, and aggravated robbery of Burton, and with the attempted aggravated murder and attempted murder of Walker, with accompanying firearm specifications. The jury returned guilty verdicts on each count and specification. The trial court afforded Summerlin the protections of the allied-offenses statute, merging a number of the offenses. It ultimately imposed a life-without-parole sentence for the aggravated murder of Burton, to be served consecutively to an 11-year prison term for the attempted aggravated murder of Walker, and consecutively to a three-year prison term for a firearm specification. Summerlin appealed.

{¶8}     Summerlin argues, in his first assignment of error, that the trial court erred when it denied his request for new counsel. On the first day of trial, with prospective jurors waiting outside the courtroom, Summerlin complained to the court that his two court-appointed attorneys had failed to share all the state's discovery with him.

{¶9}     The decision whether to appoint substitute counsel rests within the sound discretion of the trial court. *See State v. Clark*, 1st Dist. Hamilton No. C-020550,

2003-Ohio-2669, ¶ 8. The trial court is required to make an inquiry into the defendant's complaint, including whether the motion was timely and whether there had been a complete breakdown in communication between the defendant and his counsel. *See id.* at ¶ 7; *see also State v. Murphy*, 91 Ohio St.3d 516, 747 N.E.2d 765 (2001); *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, 776 N.E.2d 1135, ¶ 13 (1st Dist.).

{¶10} We note that 16 months before this challenged ruling, the court had entertained an identical oral motion from Summerlin. At that time, the court had carefully explained the limitation placed on Summerlin's counsel by Crim.R. 16(C) but nonetheless appointed new counsel to represent him.

{¶11} While the trial court's initial response had been perfunctory, when Summerlin renewed his motion, the court asked appointed defense counsel to respond. Summerlin's experienced trial counsel explained that he and co-counsel had provided Summerlin with all discovery material that had not been designated "counsel only" under Crim.R. 16(C). They had met with Summerlin 15 times before trial and had explained to him the limitations placed on them by the discovery rules. They had discussed at length their trial strategy and the plea negotiation. Counsel stated that he did not believe the attorney-client relationship had broken down. Summerlin also addressed the court, admitting that his counsel were experienced, but again requesting new counsel.

{¶12} We conclude that the trial court's decision to deny Summerlin's ill-timed, successive request for substitute counsel exhibited a sound reasoning process, and it will not be disturbed on appeal. *See Clark*, 1st Dist. Hamilton No. C-020550, 2003-Ohio-2669, at ¶ 7; *see also AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). The first assignment of error is overruled.

{¶13} Summerlin next challenges the trial court's decision denying him the opportunity to impeach Grace, a hearsay declarant, with evidence of his prior convictions. At trial, Burton's uncle testified, over objection, that Grace had told him Summerlin was present when Burton and Walker were shot. Grace did not testify at trial. After the uncle's direct examination, Summerlin asked to examine Grace's criminal record. He intended to use the criminal record, if any existed, to impeach Grace during the cross-examination of Burton's uncle.

{¶14} The state responded that Summerlin could not impeach Grace with his prior convictions without Grace being present at trial and on the witness stand as mandated in Evid.R. 609(F). That rule requires that a witness' record of conviction be shown to him during his examination. The trial court agreed and denied Summerlin's motion.

{¶15} But Evid.R. 806(A) provides that when a hearsay statement has been admitted into evidence, "the credibility of the declarant may be attacked * * * by any evidence that would be admissible for those purposes if declarant had testified as a witness." Under Evid.R. 806(C), a party may use Evid.R. 609 prior-conviction records to impeach a hearsay declarant even if that declarant does not testify. *See State v. Chambers,* 12th Dist. Butler No. CA2010-06-136, 2011-Ohio-1187, ¶ 24; *see also State v. Menton*, 7th Dist. Mahoning No. 07 MA 70, 2009-Ohio-4640, ¶ 113; *State v. Hatcher*, 108 Ohio App.3d 628, 632, 671 N.E.2d 572 (1st Dist.1996) (holding, before the addition of Evid.R. 806(C), that a hearsay declarant's criminal conviction could be admitted under Evid.R. 806 even though she did not testify). Thus the trial court's refusal to permit Summerlin access to Grace's record of prior convictions, if any existed, was error.

{¶16} Here, our record does not reveal whether Grace had any criminal record that could have been used for impeachment even if the trial court had followed Evid.R.

806. Evidence of Summerlin's guilt was overwhelming, and Grace's declaration was merely cumulative of other admissible evidence placing Summerlin at the scene of the shooting, including Walker's eyewitness testimony, phone records, and Summerlin's fingerprints on the discarded ammunition box. Walker testified at trial and was subject to cross-examination. Thus the trial court's erroneous ruling did not prejudice Summerlin. The second assignment of error is overruled.

{¶17} Summerlin next argues, in his third assignment of error, that he was denied the effective assistance of counsel for various claimed deficiencies of his trial counsel, including counsel's comment in closing argument that the jury did not get to hear "both sides of the story," and his failure to object to a police detective's testimony regarding Grace's hearsay statements that Summerlin was at the shooting scene. Summerlin also notes, but does not support with argument here, that trial counsel failed to object to jury instructions pertaining to the attempted murder of Walker as alleged in Count 5 of the indictment.

{¶18} To prevail on a claim of ineffective assistance of trial counsel, Summerlin must show, first, that trial counsel's performance was deficient and, second, that the deficient performance was so prejudicial that he was denied a reliable and fundamentally fair proceeding. *See Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *see also Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶19} Here, Summerlin's trial counsel worked diligently to discredit the state's theory of the case including effectively highlighting inconsistencies in the testimony of the state's witnesses. Counsel's inartful reference to Summerlin's failure to articulate his version of events, commented on by the state in its closing argument, was part of his

larger contention that the state had failed to carry its heavy burden of proof. After reviewing counsel's brief comment, within the totality of the evidence before the jury, and more particularly within the context of the entire closing argument, we cannot say that but for that comment the result of the trial would have been different or that it was so unreliable that the judgment must be reversed. *See Bradley* at 142. Moreover, Summerlin was not prejudiced by the detective's mention of Grace's statement, in light of Walker's trial testimony. After reviewing the entire record, we hold that Summerlin cannot demonstrate the requisite prejudice to establish his claim, because the record does not support a determination that but for these remarks or omissions, the result of the trial would have been different. *See Strickland* at 687; *see also* Bradley at 141–142. The third assignment of error is overruled.

{¶20} In his fourth assignment of error, Summerlin contends that, over his timely objection, the trial court erred in instructing the jury on his flight from the scene of the shootings. He argues that the evidence did not show that he had taken affirmative steps to avoid detection. We disagree.

{¶21} Evidence of flight is admissible to show consciousness of guilt. *See State v. Taylor*, 78 Ohio St.3d 15, 27, 676 N.E.2d 82 (1997). An instruction on flight is proper if the record contains sufficient evidence to support the charge. Flight means some escape or affirmative attempt to avoid apprehension including fleeing from the police or eyewitnesses. *See State v. Brundage*, 1st Dist. Hamilton No. C-030632, 2004-Ohio-6436, ¶ 17. The instruction may not raise a presumption of guilt or shift the burden of proof to the defendant to explain his flight. *See State v. McKibbon*, 1st Dist. Hamilton No. C-010145, 2002-Ohio-2041. The decision whether to instruct the jury on flight lies within the trial court's discretion. A reviewing court will not reverse that decision absent an abuse of that discretion. *See Brundage* at ¶ 18.

{¶22}   Here, the state's evidence showed that Summerlin, knowing that the police would soon arrive, had immediately left the scene of the shootings even though Burton lay mortally wounded and Walker appeared to be seriously injured. Summerlin hid from police, removing himself from the city following the shootings. He made statements that he knew that he was "hot," acknowledging that the police were looking for him. The state also adduced evidence that Summerlin or his associates had offered Walker money not to testify. Moreover, the trial court instructed the jury that it could find an innocent explanation for Summerlin's flight.

{¶23}   We conclude that the trial court acted within its discretion. Its decision to give the flight instruction was supported by the evidence adduced at trial and exhibited a sound reasoning process, and it will not be disturbed on appeal. *See Brundage* at ¶ 18; *see also AAAA Ents., Inc.*, 50 Ohio St.3d at 161, 553 N.E.2d 597. The fourth assignment of error is overruled.

{¶24}   Summerlin next argues that the evidence at trial was insufficient to convict him of the attempted aggravated murder of Walker as alleged in Count 5 of the indictment. Summerlin contends that, because there was no evidence that Walker had been robbed, the state had failed to establish an essential element of attempted aggravated murder. He argues, without citation to any authority, that he could not be convicted of the attempted aggravated murder of Walker because Walker had not been robbed.

{¶25}   In Count 5, Summerlin was convicted of attempted aggravated murder under R.C. 2903.01(B) and 2923.02(A), which proscribe purposely engaging in conduct that if successful would have resulted in the aggravated murder of Wayne Walker while attempting to commit, or while fleeing immediately after attempting to commit,

aggravated robbery. There is no limitation in the indictment that the robbery offense had to be committed against Walker.

{¶26} The aggravated-robbery charges against Summerlin, contained in Counts 3 and 4, were governed by R.C. 2911.01(A)(1) and 2911.01(A)(3). Under these statutes, the state was required to prove that Summerlin, in attempting or committing a theft offense against Burton, had a deadly weapon on or about his person, and had brandished or used that weapon, or had inflicted, or attempted to inflict serious physical harm on Burton.

{¶27} When reviewing the legal sufficiency of the evidence to support a criminal conviction, we must examine the evidence admitted at trial in the light most favorable to the prosecution and determine whether the evidence could have convinced any rational trier of fact that the essential elements of the crime were proven beyond a reasonable doubt. *See State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 36; *see also Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of the witnesses, as both are functions reserved for the trier of fact. *See State v. Campbell*, 195 Ohio App.3d 9, 2011-Ohio-3458, 958 N.E.2d 622 (1st Dist.).

{¶28} Throughout its case-in-chief, the state had argued that Summerlin was complicit with Huffaker in the attempt to kill Walker—an eyewitness to the aggravated robbery and murder of Burton. Under R.C. 2923.03(F), a complicitor may be prosecuted and punished as if he were a principal offender. *See State v. Corcoran*, 1st Dist. Hamilton No. C-160627, 2017-Ohio-7084, ¶ 29.

{¶29} Here, the record reflects substantial, credible evidence from which the trier of fact could reasonably have concluded that all the elements of attempted

aggravated murder had been proved beyond a reasonable doubt, including that Summerlein had participated in the theft, at gunpoint, of Burton's pistol and had ordered Huffaker to kill Walker to effect their escape. *See State v. Sanders*, 1st Dist. Hamilton Nos. C-140579 and C-140580, 2o15-Ohio-5232, ¶ 40. The trier of fact could reasonably have found that Summerlin committed or was complicit in Huffaker's commission of the attempted aggravated murder of Walker and the aggravated robbery of Burton. *See* R.C. 2923.03(F); *see also Conway* at ¶ 36; *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. The fifth assignment of error is overruled.

{¶30} Because we have found no error associated with the sufficiency of the evidence to support a conviction under Count 5, Summerlin's argument, raised in his third assignment of error above, that his trial counsel was deficient for failing to object to the jury instructions on that count must also fail.

{¶31} In his sixth assignment of error, Summerlin challenges the manifest weight of the evidence adduced to support his convictions. He argues that the state failed to establish that he was the perpetrator of the offenses. We disagree.

{¶32} Our review of the entire record fails to persuade us that the jury, acting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We can find no basis in this record to conclude that this is that "exceptional case" in which the jury lost its way. *See State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶33} The jury was entitled to reject Summerlin's theory that evidence tying him to the crimes was largely circumstantial because he had not been apprehended at the scene, little physical evidence was introduced, and Walker's testimony was "not credible." The state presented ample evidence to support the convictions, including

testimony that Burton had told his father that Summerlin had threatened him. Walker told paramedics at the scene that "Joker" had shot Burton. He testified at trial that he saw Summerlin shoot Burton, and that Summerlin had ordered Huffaker to shoot him. Summerlin's fingerprints were found on an ammunition box left at the scene. Communications from Summerlin's cellular telephone made after the killing of Burton and the wounding of Walker indicated that he thought he was "hot."

{¶34} As the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact to determine, the jury, in resolving conflicts in the testimony, could properly have found Summerlin guilty of the charged crimes and thus did not lose its way. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The sixth assignment of error is overruled.

{¶35} In his seventh assignment of error, Summerlin claims that the trial court erred in admitting into evidence, over his objection, two prejudicial photographs taken from his Facebook profile page. *See* Evid.R. 403(A). One photo shows Summerlin with a gun in his waistband. The other shows Summerlin with Huffaker, each with a gun. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus; *see State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus.

{¶36} Here, the photos served to identify Summerlin as "Joker" and to demonstrate Summerlin's association with Huffaker. In light of Walker's trial testimony, the trial court's decision that the photographs' probative value was not substantially outweighed by the danger of unfair prejudice exhibited a sound reasoning process and will not be disturbed on appeal. *See Morris* at ¶ 14; *see also AAAA Ents.,*

11

*Inc.*, 50 Ohio St.3d at 161, 553 N.E.2d 597. The seventh assignment of error is overruled.

{¶37} Therefore, the trial court's judgment is affirmed.

Judgment affirmed.

**ZAYAS** and **DETERS, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.