[Cite as *State v. Pettus*, 2019-Ohio-2023.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170712 |
| | | TRIAL NO. B-1605805 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| LASHAWN PETTUS, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Sentences Vacated in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  May 24, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Anzelmo Law* and *James A. Anzelmo*, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1} Defendant-appellant Lashawn Pettus appeals the trial court's judgment convicting him of 11 counts of forgery and four counts of theft.

{¶2} He argues that the trial court erred by denying his motion to dismiss the theft counts in his indictment; that the trial court erred by allowing the prosecutor to engage in improper conduct; that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence; and that the trial court erred in the imposition of sentence.

{¶3} We hold that the trial court erred in imposing consecutive sentences without making the requisite findings at Pettus's sentencing hearing, and we vacate that portion of Pettus's sentence and remand for resentencing. We otherwise affirm the trial court's judgment.

### Factual and Procedural Background

{¶4} From June 18, 2016, through July 8, 2016, Pettus opened accounts and uttered checks at four separate banks, specifically Fifth Third Bank, Huntington Bank, US Bank, and PNC Bank. All the checks uttered by Pettus were ultimately rejected as fraudulent due to an invalid routing number, and the banks were unable to process them. Before the banks discovered that the checks were fraudulent, Pettus made various cash withdrawals from his accounts at each bank, and he purchased money orders from one of the banks. The fraudulent checks were the source of the funds for all the transactions. During the time that he engaged in this conduct, Pettus resided at the Talbert House while on transitional control after being released from prison for unrelated offenses.

{¶5} Pettus was indicted for 12 counts of forgery in violation of R.C. 2913.31(A)(3) and four counts of theft in violation of R.C. 2913.02(A)(3). All

individual counts of theft that had been committed against each bank were aggregated and charged as a single offense pursuant to R.C. 2913.61(C)(1). Pettus filed a motion to dismiss all theft counts in his indictment. He argued that they were improperly aggregated into one offense because R.C. 2913.61(C)(1) only permitted aggregation where the victim of the theft offenses was an elderly person, disabled adult, or military person, and where the offenses were committed by an offender in the offender's employment, capacity, or relationship to the victim. The trial court denied Pettus's motion.

{¶6} Pettus additionally filed a motion in limine to prevent the state from introducing any evidence of his prior convictions and any information related to his being on transitional control. Pettus asked the trial court to prohibit any witnesses from the Talbert House from testifying that he had been allowed to leave the Talbert House for what he reported to be employment purposes or for other preapproved reasons, where those approved leave times aligned with dates and times when the charged offenses had been committed. In ruling on the motion in limine, the trial court stated:

> I see no connection between lying to Talbert House in the morning and uttering forged checks during the day. I'm not saying none of the testimony from Talbert House is going to be relevant. The fact that he wasn't there has some probative value, I think. But the lying there doesn't have any bearing on whether he committed these crimes. And I think Rule 404 would prohibit any such inference from those lies about where he was going to be today to the conduct that's at issue in this case.
>
> *   *   *
>
> Now, in terms of the fact he was in Talbert House, [defense counsel], I don't think that there is any issue, any risk of the Court being

3

prejudiced if we go to a bench trial.  * * *  So I don't think I'll draw any inference from the fact he was in Talbert House accidentally [sic].

* * *

To that extent, the motion is overruled, but to the extent that what's involved here is evidence of lies at one point in the day to prove lies at a later point in the day, I'm not going to permit that argument to be made or the evidence to be offered * * *.

* * *

At least preliminarily you have my ruling.  Of course it is a preliminary ruling as in all in limine motions are rulings.

{¶7}   Pettus's case was tried to the bench.  The state presented extensive testimony regarding Pettus's transactions with each bank.

{¶8}   With respect to Fifth Third Bank, Pettus was charged with forgery in counts one through five of the indictment and theft in count six of the indictment. The evidence presented at trial established that Pettus opened an account at the Calhoun Branch of Fifth Third Bank on June 18, 2016.  Pettus deposited fraudulent check #1997 for $4,500 and received $200 cash back that same day.

{¶9}   The next day, June 19, 2016, Pettus deposited three separate checks at a Fifth Third Bank branch located inside a Kroger grocery store on Kenard Avenue. He deposited fraudulent check #1998 for $4,500, fraudulent check #1995 for $2,500, and fraudulent check #2000 for $2,500.  He withdrew no funds that day.

{¶10}  On June 20, 2016, at the University branch of Fifth Third Bank, Pettus deposited fraudulent check #2018 for $750, and he received $200 cash back.

{¶11}  And on June 21, 2016, also at the University branch of Fifth Third Bank, Pettus withdrew $1,497 and purchased three money orders in the amount of $1,500 each.  Later that same day, at a Fifth Third Bank branch located on West Eighth Street, Pettus withdrew $2,850.

{¶12}  Each of these transactions was captured on Fifth Third's surveillance videos, which were admitted into evidence and played for the court.

{¶13}  Fifth Third discovered that the checks deposited by Pettus were fraudulent when the checks were rejected for having an invalid routing number after being sent to processing.  The routing number on the checks was an Automated Clearing House routing number, which cannot be used to present physical checks.  All five fraudulent checks uttered at Fifth Third by Pettus purported to be drawn on the United States Treasury.  And, but for the last digit, the account number on all the checks was identical to the social security number that Pettus had given the bank.

{¶14}  As a result of Pettus's fraudulent transactions, Fifth Third suffered a total loss of $4,747.

{¶15}  With respect to Huntington Bank, Pettus was charged with forgery in count seven of the indictment and theft in count eight of the indictment.  The state introduced evidence showing that, on June 23, 2016, Pettus opened a bank account at Huntington Bank's Westwood branch.  Pettus did not make an initial deposit when opening the account, but later that same day, at a Huntington Bank branch on Harrison Avenue, he deposited fraudulent check #2019 for $7,500.  As was the case with the checks at Fifth Third, that check purported to be drawn on the United States Treasury.  And again, but for the last digit, the account number on the check was identical to the social security number that Pettus had given the bank.

{¶16}  The next day, June 24, 2016, at a Huntington Bank Branch in Covington, Kentucky, Pettus withdrew $500 from his account.  And on June 28, 2016, Pettus made a $900 cash deposit into his account at a Huntington Bank branch on Vine Street.  Then on June 29, 2016, at the Westwood branch of Huntington Bank, Pettus made two separate cash withdrawals of $380 and $420.

{¶17}  The check that Pettus had deposited on June 23 was not honored and was returned to the bank as fraudulent.  As a result of Pettus's fraudulent transactions, Huntington Bank suffered a $400 loss.  With the exception of the $900

cash deposit, Pettus's transactions were captured on surveillance videos, which were admitted into evidence and played for the court. A still photograph of Pettus making the cash deposit was also entered into evidence.

{¶18} As to US Bank, Pettus was charged with forgery in counts nine through 13 of the indictment and theft in count 14 of the indictment. The evidence presented at trial established that, on June 25, 2016, Pettus opened an account at the Clifton branch of US Bank. He deposited fraudulent check #2002 for $500, and he received $200 cash back. Later that same day, at the bank's University branch, he deposited fraudulent check #2025 in the amount of $4,527 and received $200 cash back.

{¶19} The next day, June 26, 2016, at a US Bank branch located in Newport, Kentucky, Pettus deposited fraudulent check #2029 for $4,830 and received $200 cash back.

{¶20} On June 27, 2017, at the Queensgate branch of US Bank, Pettus deposited fraudulent check #2021 for $4,485 and received $185 cash back. He also deposited fraudulent check #2027 for $3,892 and received $200 cash back from the Over The Rhine branch of US Bank.

{¶21} Pettus made two separate cash withdrawals from his US Bank account on June 28, 2016. He withdrew $6,500 from a branch located at Fifth and Walnut Streets, and he withdrew $5,500 from the Queensgate branch. All of Pettus's transactions at US Bank were captured on surveillance videos, which were admitted into evidence and played for the trial court.

{¶22} Again, each fraudulent check uttered by Pettus to US Bank purported to be drawn on the United States Treasury, and, but for the last digit, the account number on all the checks was identical to the social security number that Pettus had given the bank. US Bank sent the checks to the Federal Reserve for processing based on their routing number. The bank received notice that the checks were non-cashable items, meaning that either the routing number or account number on the

checks was not legitimate, and they were returned to the bank unpaid. As a result of Pettus's fraudulent transactions, US Bank suffered a total loss of $12,985.

{¶23} Lastly, as to PNC Bank, Pettus was charged with forgery in count 15 of the indictment and theft in count 16 of the indictment. The evidence presented at trial established that on July 6, 2016, Pettus opened an account with PNC Bank at its University branch. He deposited fraudulent check #72789 for $3,500. On July 8, 2016, at the Fourth Street branch of PNC Bank, Pettus made a $2,000 cash withdrawal. Still photographs of Pettus engaging in these transactions were admitted into evidence.

{¶24} PNC Bank received notice that the check deposited by Pettus was a nonnegotiable instrument with an invalid routing number. The check purported to be drawn on the United States Treasury. And, as with the other bank transactions, the account number on the check was nearly identical to the social security number that Pettus had provided to the bank, except the account number began with the digits "10" and was missing the last digit of Pettus's social security number. PNC Bank's senior investigator described this similarity as unusual. PNC Bank suffered a total loss of $2,000 from Pettus's fraudulent transactions.

{¶25} The routing number on each fraudulent check uttered by Pettus belonged to a government agency, specifically the Defense Finance and Accounting Service ("DFAS"), which is a subdivision of the Department of Defense. DFAS employee Shane Zigler testified that DFAS performs accounting and finance services for all branches of the armed services. He explained that DFAS disburses funds in two methods: through paper check transactions and through electronic funds transfers. Electronic funds transfers are processed through the Automated Clearing House ("ACH"), which is a product of the Federal Reserve Bank.

{¶26} Zigler explained that a routing number is necessary to effectuate payments through the ACH, and that his DFAS office, located in Cleveland, has its

own routing number to disburse its transactions through the ACH. ACH routing numbers can only be used for electronic funds transfers.

{¶27} Zigler testified that he had examined the 12 checks uttered by Pettus, and that the checks contained an ACH routing number belonging to DFAS, which could never be used to process a physical check. Zigler further testified that the checks uttered by Pettus did not resemble a real United States Treasury check. He described certain features of real Treasury checks, including a seal and an image of the Statue of Liberty, and he explained that these necessary features were absent on the checks uttered by Pettus. Zigler identified the stated maker of the checks uttered by Pettus as "International Bill of Exchange, Shawn R. Pettus-Brown, Secured Party, Prime Creditor" and "PB Ohio Trust, Shawn Brown." He testified that neither of these makers have authority to draw on DFAS accounts using DFAS routing numbers or to issue their own United States Treasury check, and that he had found no records authorizing Pettus to receive funds through DFAS.

{¶28} In addition to this testimony concerning Pettus's transactions with the banks, the state presented the testimony of Talbert House employee Mollie Minelli. Minelli testified that she was Pettus's case manager while he stayed at the Talbert House. She explained that the Talbert House had certain restrictions on when residents could leave the facility and that prior approval to leave was necessary. She identified a log containing the times that Pettus had checked in and out of the Talbert House and his listed reasons for doing so. The log indicated that Pettus had been signed out to go to work, church, and the gym on the days and times that the fraudulent transactions had occurred.

{¶29} At the conclusion of the bench trial, the trial court dismissed count 11 of the indictment, which was a charge of forgery against US Bank, for lack of jurisdiction. But it otherwise found Pettus guilty of all remaining offenses. Prior to the imposition of sentence, Pettus argued that various offenses were required to merge at sentencing because they were allied offenses of similar import. Specifically,

he argued that the forgeries committed against Fifth Third Bank in counts one and five of the indictment merged with the theft committed against Fifth Third Bank in count six of the indictment; that the forgeries committed against US Bank in counts nine, 10, 12, and 13 of the indictment merged with the theft committed against US Bank in count 14 of the indictment; and that the forgeries committed against Fifth Third Bank in counts two, three, and four of the indictment merged with each other. In summary, he argued that in cases where funds were withdrawn at the same time as the deposit, the forgeries and thefts should merge. The trial court rejected Pettus's merger argument.

{¶30} With respect to the offenses committed against Fifth Third Bank, Pettus was sentenced to 12 months' imprisonment on the forgeries charged in counts one through five of the indictment and 18 months' imprisonment on the theft charged in count six of the indictment. As to the charges against Huntington Bank, Pettus was sentenced to six months' imprisonment on the forgery charged in count seven of the indictment, and to 180 days' incarceration in the Hamilton County Justice Center on the theft charged in count eight of the indictment. With respect to the offenses committed against US Bank, Pettus was sentenced to 12 months' imprisonment on the forgeries charged in counts nine, 10, 12, and 13 of the indictment, and 18 months' imprisonment on the theft charged in count 14 of the indictment. Last, as to the offenses committed against PNC Bank, Pettus was sentenced to 12 months' imprisonment for each of the forgery charged in count 15 of the indictment and the theft charged in count 16 of the indictment.

{¶31} The sentences for the forgeries committed against each bank were made concurrent to each other and to their corresponding theft conviction. But each group of concurrent sentences was made consecutive to each other, resulting in an aggregate sentence of 60 months' imprisonment.

### *Aggregation under R.C. 2913.61*

{¶32}  In his first assignment of error, Pettus argues that the trial court erred by denying his motion to dismiss the theft counts in his indictment.  We review de novo the trial court's denial of Pettus's motion to dismiss.  *State v. Thompson*, 1st Dist. Hamilton No. C-130053, 2013-Ohio-2647, ¶ 4.

{¶33}  Pettus was indicted on four counts of theft under R.C. 2913.02(A)(3). Pursuant to R.C. 2913.61(C)(1), the state aggregated all individual thefts that had been committed against each bank into a single count of theft relating to that bank. R.C. 2913.61(C)(1) provides that:

> **When a series of offenses under section 2913.02 of the Revised Code**, or a series of violations of, attempts to commit a violation of, conspiracies to violate, or complicity in violations of division (A)(1) of section 1716.14, section **2913.02**, 2913.03, or 2913.04, division (B)(1) or (2) of section 2913.21**, or section 2913.31 or 2913.43 of the Revised Code involving a victim who is an elderly person or disabled adult,** is committed by the offender in the offender's same employment, capacity, or relationship to another, all of those offenses shall be tried as a single offense.  When a series of offenses under section 2913.02 of the Revised Code, or a series of violations of, attempts to commit a violation of, conspiracies to violate, or complicity in violations of section 2913.02 or 2913.43 of the Revised Code involving a victim who is an active duty service member or spouse of an active duty service member is committed by the offender in the offender's same employment, capacity, or relationship to another, all of those offenses shall be tried as a single offense.  The value of the property or services involved in the series of offenses for the purpose of determining the value as required by

division (A) of this section is the aggregate value of all property and services involved in all offenses in the series.

(Emphasis added.)

{¶34} Pettus argues that R.C. 2913.61(C)(1) only permits aggregation when the victim of theft offenses is an elderly person, disabled adult, or military person. He relies on *State v. Phillips*, 12th Dist. Clinton No. CA2009-03-001, 2010-Ohio-2711, to support his argument. In *Phillips*, the defendant had stolen 18 different items from 13 different victims, but was only indicted for a single theft offense in which the value of all stolen items was aggregated. *Id.* at ¶ 67-68. The Twelfth District held that R.C. 2913.61(C)(1) did not allow for aggregation of the theft offenses because it "is limited to thefts involving elderly or disabled victims, through the offender's employment, capacity, or relationship with another." *Id.* at ¶ 72.

{¶35} But the Eighth District has applied R.C. 2913.61(C)(1) to allow aggregation of theft offenses in situations not involving elderly persons or disabled adults. *State v. Williams*, 8th Dist. Cuyahoga No. 91167, 2009-Ohio-732, ¶ 11 (holding that aggregation under R.C. 2913.61(C)(1) was proper where the defendant had stolen multiple items from the same store over a period of several days).

{¶36} R.C. 2913.61(C)(1) is not ambiguous. A plain reading of the statute, based on the legislature's use of commas separating the clause concerning elderly persons or disabled adults that is emphasized above, clearly indicates that theft offenses under R.C. 2913.02 committed by an offender in the offender's same employment, capacity, or relationship to another shall be aggregated. The clause requiring that the victim of the offenses be an elderly person or disabled adult is limited to violations of R.C. 2913.31 and 2913.43.

{¶37} The legislative history of R.C. 2913.61 supports our interpretation. The language in R.C. 2913.61(C)(1) pertaining to victims who are elderly persons or disabled adults was added to the statute in 1999 Am.Sub.H.B. No. 2. Prior to the inclusion of that language, the statute read "[w]hen a series of offenses under section

11

2913.02 of the Revised Code is committed by the offender in the offender's same employment, capacity, or relationship to another, all of those offenses shall be tried as a single offense." The statute thus permitted aggregation of theft offenses under R.C. 2913.02 before it permitted aggregation of violations of R.C. 2913.31 and 2913.43 involving victims who were elderly persons or disabled adults.

{¶38} The language in R.C. 2913.61(C)(1) permitting aggregation of certain offenses involving victims who are military persons was subsequently added to the statute in 2014 Am.Sub.H.B. 488, and it does not detract from the requirement that a series of theft offenses under R.C. 2913.02, committed in the offender's same employment, capacity, or relationship to another, shall be aggregated.

{¶39} We hold that R.C. 2913.61(C)(1) does not limit the aggregation of theft offenses under R.C. 2913.02 to theft offenses involving victims who are elderly persons, disabled adults, or military persons, and that the trial court did not err in denying Pettus's motion to dismiss.

{¶40} The first assignment of error is overruled.

### Prosecutorial Misconduct

{¶41} In his second assignment of error, Pettus argues that the trial court erred by allowing the prosecutor to engage in misconduct.

{¶42} Prosecutorial misconduct "will not provide a basis for overturning a conviction unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial." *State v. Smith*, 1st Dist. Hamilton No. C-170335, 2018-Ohio-4615, ¶ 19, citing *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 257. A prosecutor's remarks or actions will only mandate reversal if they were improper and they prejudicially affected substantial rights of the accused. *Id.*, citing *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶ 45.

{¶43} Pettus first argues that the prosecutor disregarded the trial court's partial granting of his motion in limine by introducing testimony from witness Mollie Minelli regarding his prior felony convictions for white-collar crime and his placement on transitional control.

{¶44} Because this was a bench trial, we presume that the trial court only considered relevant evidence and did not consider improper evidence. *State v. Pennington*, 1st Dist. Hamilton Nos. C-170199 and C-170200, 2018-Ohio-3640, ¶ 46.

{¶45} The trial court's initial ruling on Pettus's motion in limine, which was limited to prohibiting the state from using Pettus's lies in one part of the day to show that he lied in another part of the day, was "a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue." *State v. Grubb*, 28 Ohio St.3d 199, 201-202, 503 N.E.2d 142 (1986); *State v. Morales*, 1st Dist. Hamilton No. C-120670, 2014-Ohio-362, ¶ 27. The propriety of a court's ruling on a motion in limine need not be reviewed on appeal unless the claimed error was preserved by a timely objection when the issue was reached during trial. *Grubb* at 203, citing *State v. Leslie,* 14 Ohio App.3d 343, 344, 471 N.E.2d 503 (2d Dist.). Here, Pettus never objected at trial to any testimony offered by Minelli. Consequently, we review for plain error. *See State v. Finley*, 1st Dist. Hamilton No. C-061052, 2010-Ohio-5203, ¶ 34.

{¶46} Contrary to Pettus's argument, Minelli never testified that Pettus had been on transitional control or that he had prior felony convictions. She explained that she was Pettus's case manager while he resided at the Talbert House, and her testimony focused on explaining when Pettus had been given permission to leave the Talbert House and what reason he had provided for doing so. This testimony was used to establish Pettus's identity as the perpetrator of the offenses, and not for the purpose that the trial court had previously prohibited. Minelli's testimony did not deprive Pettus of a fair trial and its admission was not plain error.

13

{¶47} Pettus additionally argues that the prosecutor committed misconduct by asking improper leading questions of its own witnesses. But Pettus fails to cite a single example in the record of where such an allegedly improper question was asked.

{¶48} Pursuant to App.R. 16(A)(3), an appellate brief must contain "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." App.R. 16(A)(7) further provides that the brief must contain "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."

{¶49} Pettus has provided no reference to the place in the record where the alleged error is reflected, and we decline to go through the record and determine whether any question asked by the prosecutor was an improper leading question. *See State v. Wallace*, 1st Dist. Hamilton No. C-160613, 2017-Ohio-9187, ¶ 54 (where the defendant argued that certain text messages of the victim that had been admitted into evidence contained hearsay, but failed to identify which text messages were being challenged, the court declined to examine all the text messages to determine whether they contained hearsay).

{¶50} The second assignment of error is overruled.

### Weight and Sufficiency

{¶51} In his third assignment of error, Pettus challenges the weight and the sufficiency of the evidence supporting his convictions.

{¶52} In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492

(1991), paragraph two of the syllabus. But when considering a challenge to the weight of the evidence, the court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the court clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶53} Pettus was convicted of theft pursuant to R.C. 2913.02(A)(3), which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception." And he was convicted of forgery pursuant to R.C. 2913.31(A)(3), which provides that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [u]tter, or possess with purpose to utter, any writing that the person knows to have been forged."

{¶54} The evidence presented at trial established that Pettus opened accounts at four separate banks. Over a short period of time, he deposited multiple fraudulent checks into the accounts. Because the checks contained an invalid routing number, they could not be processed. Pettus then withdrew cash from the accounts, for which the fraudulent checks were the source of the funds. The fraudulent checks all purported to be drawn on the United States Treasury, but did not contain any of the necessary features found on a real United States Treasury check. Unusually and uncommonly, the account number on all of the checks was nearly identical to the social security number that Pettus had provided as his to the banks. And the paper checks uttered by Pettus contained an ACH routing number belonging to DFAS that was used solely for electronic funds transfers. Pettus had no authority to receive funds from DFAS, and the stated makers on the checks uttered by Pettus had no authority to write checks on the account.

{¶55} Viewed in the light most favorable to the prosecution, the evidence established beyond a reasonable doubt that Pettus had knowingly committed theft by

deception and had, with the purpose to defraud, uttered checks that he knew to have been forged. *See Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus. Nor was this the rare case in which the trier of fact lost its way and committed such a manifest miscarriage of justice in convicting Pettus that his convictions must be reversed. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We accordingly find that Pettus's convictions were supported by both the weight and the sufficiency of the evidence.

{¶56} Pettus raises specific challenges to several of his convictions. He argues that the trial court did not have jurisdiction to convict him of theft against Huntington Bank in count eight of the indictment because a portion of the theft occurred in Kentucky. With respect to that charge, the record established that after opening an account and depositing a fraudulent check at Huntington Bank branches in Ohio, Pettus then withdrew $500 from his account at a branch of the bank in Covington, Kentucky. Within a period of days, he deposited $900 cash into his account, and then made two separate withdrawals of $380 and $420. Except for the $500 withdrawal, all other transactions occurred in Ohio.

{¶57} R.C. 2901.11(A)(1) provides that a person is subject to criminal prosecution and punishment in Ohio if any element of a committed offense took place in the state. As set forth above, the theft alleged in count eight of the indictment took place in both Kentucky and Ohio, and consequently, Pettus was subject to prosecution in Ohio. *See State v. Campa*, 1st Dist. Hamilton No. C-010254, 2002 WL 471174 (Mar. 29, 2002).

{¶58} With respect to count eight, Pettus further argues that the $900 cash deposit into his Huntington Bank account negated any possible theft offense. This argument is without merit. Pettus deposited a fraudulent check in the amount of $7,500 into his account at Huntington Bank. He then withdrew $500, $380, and $420 from his account in three separate transactions. The $900 cash deposit

lessened the amount of the bank's financial loss, but Pettus still stole $400 from the bank.

{¶59} Pettus contends that because neither the teller at Fifth Third Bank to whom he had uttered fraudulent check #2018, nor the teller at US Bank from whom he had withdrawn $6,500 could positively identify him as the person who had engaged in those transactions, his corresponding convictions must be reversed. Despite Pettus's assertion, the record indicates that while the US Bank teller initially expressed hesitation about being able to identify Pettus in person, she then positively identified him in the courtroom. Both of these transactions were captured on video and played for the trial court. The record contained sufficient evidence from which the trial court could have determined that Pettus had committed these offenses.

{¶60} Pettus additionally contends that because the amount alleged to have been taken in the theft committed against Fifth Third Bank in count six of the indictment was $7,500, he could only have been convicted of a felony of the fifth degree. Pettus is mistaken. R.C. 2913.02(B)(2) provides that "[i]f the value of the property or services stolen is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars, a violation of this section is grand theft, a felony of the fourth degree." Pettus was properly convicted of theft as a felony of the fourth degree.

{¶61} Finding no merit to the arguments raised by Pettus, we hold that his convictions for forgery and theft were supported by the sufficiency and the weight of the evidence. The third assignment of error is overruled.

*Sentencing*

{¶62} In his fourth and fifth assignments of error, Pettus challenges the sentences imposed by the trial court. Because these assignments of error are related, we address them together.

17

{¶63} Pursuant to R.C. 2953.08(G)(2)(a), we may modify or vacate a defendant's sentence only if we clearly and convincingly find that the record does not support the mandatory sentencing findings or that the sentence is contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22-23; *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 5 (1st Dist.).

### 1. Consecutive Sentences

{¶64} Pettus argues that the trial court erred by imposing consecutive sentences without making the required statutory findings at the sentencing hearing.

{¶65} R.C. 2929.14(C) requires that a trial court make various findings before imposing consecutive sentences. A trial court must make these mandated findings at the sentencing hearing and incorporate the findings into the sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. The trial court need not recite the findings verbatim, but a reviewing court must be able to discern from the record that the court engaged in the requisite analysis and determine that the record contains evidence to support the findings. *Id.* at ¶ 29.

{¶66} The trial court in this case incorporated findings under R.C. 2929.14(C) into Pettus's sentencing entry. It found that consecutive sentences were necessary to protect the public and to punish Pettus, and were not disproportionate the seriousness of Pettus's conduct and to the danger Pettus posed to the public. It further found that Pettus's criminal history showed a need to protect the public from future crime committed by Pettus.

{¶67} But the trial court failed to make these findings at the sentencing hearing. It referenced Pettus's criminal history at the sentencing hearing, but it never found that consecutive sentences were necessary to protect the public from future crime or to punish Pettus, or that consecutive sentences were not disproportionate to the seriousness of Pettus's conduct and to the danger he posed to

the public. *See* R.C. 2929.14(C)(4). Nor can these findings be discerned from the trial court's statements at the sentencing hearing. *See Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 29.

{¶68} While the trial court made the necessary findings to support the imposition of consecutive sentences on a sentencing worksheet, this was not sufficient to comply with *Bonnell*. *See State v. Rice*, 1st Dist. Hamilton No. C-140348, 2015-Ohio-5586, ¶ 15.

{¶69} We therefore hold that the trial court erred in imposing consecutive sentences without making the required findings at the sentencing hearing.

### 2. R.C. 2929.11 and 2929.12

{¶70} Pettus further argues that the trial court failed to consider the principles and purpose of sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12 before imposing sentence.

{¶71} We have consistently held that R.C. 2929.11 and 2929.12 are not fact-finding statutes, and that, in the absence of an affirmative demonstration by the defendant to the contrary, we may presume that the trial court considered them. *State v. Patterson*, 1st Dist. Hamilton No. C-170329, 2018-Ohio-3348, ¶ 60.

{¶72} Pettus's argument is meritless because the trial court specifically stated at the sentencing hearing that it had considered the principles and purposes of sentencing and all seriousness and recidivism factors.

### 3. Allied Offenses

{¶73} Pettus additionally argues that the trial court failed to merge various convictions that were allied offenses of similar import. Because he raised this argument before the trial court, and because the court made a merger determination, we conduct a de novo review. *State v. Corcoran*, 1st Dist. Hamilton No. C-160627,

2017-Ohio-7084, ¶ 15; *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1.

{¶74} Under R.C. 2941.25, separate sentences may be imposed on a defendant whose conduct supports multiple offenses if the offenses were dissimilar in import, were committed separately, or were committed with a separate animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus; *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 76.

{¶75} Pettus first contends that several of his convictions for forgery and theft are subject to merger. Specifically, he argues that with respect to the offenses committed against Fifth Third Bank, his forgery convictions in count one and five must merge with his theft conviction in count six. And that with respect to the offenses committed against US Bank, his forgery convictions in counts nine, ten, 12, and 13 must merge with his theft conviction in count 14. Pettus argues that these offenses are subject to merger because at the same time that he uttered fraudulent checks in counts one, five, nine, ten, 12, and 13, he engaged in a cash withdrawal, which constituted part of the thefts in counts six and 14, and, consequently, that these offenses were committed at the same time and with the same animus.

{¶76} Pettus relies on *State v. Marneros*, 2015-Ohio-2156, 35 N.E.3d 925 (8th Dist.), and *State v. Taylor*, 4th Dist. Hocking No. 12CA10, 2013-Ohio-472, in support of his argument.

{¶77} In *Marneros*, the defendant was likewise convicted of theft under R.C. 2913.02(A)(3) and forgery under R.C. 2913.31(A)(3). Because the defendant pled guilty to these offenses, the record contained few facts, but the court noted that multiple checks belonging to the victim, which the victim did not write, had been deposited into the defendant's account over a six-week period. *Marneros* at ¶ 42. The Eighth District held that the defendant's convictions for forgery and theft were subject to merger because they occurred simultaneously and arose from the same animus, stating that the forgery occurred when the defendant uttered the checks and

the theft occurred when the defendant received the victim's money into his account. *Id.* at ¶ 44.

{¶78} In *Taylor*, the defendant was convicted of theft under R.C. 2913.02(A)(1) and forgery under R.C. 2913.31(A)(3) after forging the name of an elderly gentleman on a check and then cashing the check at the bank on which it was drawn. *Taylor* at ¶ 8. The Fourth District held that the defendant's theft and forgery convictions were subject to merger. It explained that the forgery occurred when the defendant presented the check at the bank and the theft occurred when the defendant received the victim's money, and that the offenses "occurred simultaneously, as a result of the same conduct, and arose from the same animus." *Id.* at ¶ 13.

{¶79} We find *Marneros* to be factually distinguishable because the defendant never made withdrawals after depositing the checks. And *Taylor* was not decided under the allied-offense analysis set forth in *Ruff*, but under the analysis set forth in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, which is no longer controlling law.

{¶80} Under the facts of this case, we find that the offenses of forgery and theft were committed separately. The offenses of forgery were committed when Pettus uttered the checks that he knew to have been forged. And the offenses of theft were then subsequently committed when Pettus made a cash withdrawal from his account. The crimes were separate and distinct acts committed during a course of criminal conduct. *See State v. Hayes*, 8th Dist. Cuyahoga No. 105048, 2017-Ohio-7718, ¶ 23 (in rejecting the defendant's argument that convictions for passing bad checks and grand theft were allied offenses of similar import, the court recognized that "[a]lthough the grand theft was facilitated by the passing of bad checks, and thus could be considered a single course of conduct, the crimes were all based on separate and distinct acts.").

{¶81}  Because Pettus separately committed the offenses of forgery and theft that he argues were allied offenses of similar import, we hold that the trial court did not err in failing to merge the offenses.

{¶82}  Pettus further argues that his three convictions for forgery committed against Fifth Third Bank in counts two, three, and four were subject to merger because he uttered all three checks that were the subject of each offense in a single transaction with the same animus.  We disagree.  The record indicates that Pettus separately endorsed each check before presenting them for deposit.  And he purposely uttered three separate fraudulent checks with the purpose of defrauding the bank of the monetary amount of each individual check.  We thus find that the forgery offenses were committed both separately and with a separate animus, and that the trial court did not err in failing to merge Pettus's convictions for these offenses.

### 4.  DNA Testing

{¶83}  Pettus last argues that the trial court erred in failing to inform him of the requirement in R.C. 2901.07(B)(1) that he would be required to submit to DNA testing as a result of his felony conviction and of the consequences for failing to do so.  We have previously held that R.C. 2901.07(B) confers no substantive rights on a defendant because its requirements "were not intended to benefit the defendant, but rather to facilitate the DNA testing of felony offenders for the maintenance of a DNA database."  *State v. Taylor*, 1st Dist. Hamilton No. C-150488, 2016-Ohio-4548, ¶ 6, quoting *State v. Moore,* 12th Dist. Clermont No. CA2014-02-016, 2014-Ohio-5191, ¶ 18.  Any error resulting from the trial court's failure to inform Pettus of the statute's requirements was harmless.  *Id.*

### 5. Sentencing Summary

{¶84} In summary, we hold that the trial court erred in imposing consecutive sentences without making the requisite findings at the sentencing hearing. But Pettus's sentence was not otherwise contrary to law. *See Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 22-23; *White*, 2013-Ohio-4225, 997 N.E.2d 629, at ¶ 5. The fourth and fifth assignments of error are sustained in part and overruled in part.

### Conclusion

{¶85} Because the trial court erred in imposing consecutive sentences without making the required findings at the sentencing hearing, we vacate the consecutive nature of Pettus's sentences and remand for resentencing as to that issue. The judgment of the trial court is otherwise affirmed.

Judgment affirmed in part and sentences vacated in part, and cause remanded.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.