[Cite as *State v. Femuels*, 2020-Ohio-2926.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190486 |
| | | TRIAL NO. C-17CRB-18183 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| BRANDLEY FEMUELS, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:    Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: May 13, 2020


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Adam Tieger*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Ben Swift*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}    Defendant-appellant Brandley Femuels appeals the trial court's judgment convicting him of domestic violence in violation of R.C. 2919.25(A), raising five assignments of error for our review. Finding his assignments of error to be without merit, we affirm the trial court's judgment.

*Factual Background*

{¶2}    On July 4, 2017, Femuels and his then-girlfriend Marlo Woods were involved in a physical altercation at Assurance Health, where they were both employed. Following the incident, Femuels was charged with domestic violence in violation of R.C. 2919.25(A).

{¶3}    At a bench trial, Woods testified that she and Femuels lived together from February 3, 2017, until the day of the incident. They had previously lived together from February 2016 until May 2016, and they had a son together. Woods and Femuels drove to work together on July 4. Woods, a charge nurse, assisted Femuels, a technician, with his patients throughout the morning. When Woods joined Femuels in the breakroom for lunch, she overheard his end of a telephone conversation. After hearing Femuels state, "I'm done with her" and "I'm coming to you," Woods told Femuels that their relationship was over and asked him to return the keys to her house and car. Woods testified that Femuels then grabbed her around the neck and began to choke her, stating, "Fuck these cameras. Fuck this job. I'm going to kill you, bitch. You're not going to take away my lifestyle."

{¶4}    According to Woods, Femuels threw her onto the floor and continued to choke her. Woods could not breathe, and she felt as if her throat was being

crushed. Woods and Femuels were the only persons present when the altercation began, but several coworkers came into the breakroom as Woods was trying to get off the ground. Woods testified that her coworkers stood between her and Femuels, and that Femuels continued to lunge at her several times. Woods suffered pain to her ribs and her right eye following Femuels's attack.

{¶5} Deborah Hall, a coworker of Femuels and Woods, testified that she entered the breakroom after hearing someone screaming. She saw Femuels standing over Woods, who was in the process of getting up off the floor. Woods had red markings on her neck and arm and appeared frightened. Hall attempted to deescalate the situation by standing between the two, but they continued to yell at each other. She twice heard Femuels threaten to kill Woods, once in the breakroom and then again when she accompanied the parties outside for Femuels to get his belongings out of Woods's car.

{¶6} Curtis Hall[1] also entered the breakroom after seeing several other employees run in that direction. He saw Woods on one knee, trying to stand up, with Femuels standing over her. Curtis noticed that Woods had red markings on her wrist and neck. He testified that Woods wanted Femuels to return her keys, but that Femuels would not comply. Curtis also went outside with the parties while Femuels obtained his belongings from Woods's car, and while outside he heard Femuels tell Woods that "I will kill you."

{¶7} Femuels testified in his own defense. He explained that he and Woods argued the night before the incident after he became upset that Woods sent a text message to his children, but that they drove to work together the following day.

---

[1] We refer to Curtis Hall as Curtis because another witness has the same surname.

3

Femuels testified that Woods overheard him at work on a telephone call with a customer of a lawn care business that he owns, and that Woods subsequently engaged in an aggressive conversation with him and told him to find a different ride home. Femuels entered the breakroom to retrieve the keys to Woods's car so that he could get his belongings out of the car, and Woods followed him. Femuels testified that Woods had taken the keys, and when he attempted to get them back, Woods "went down to the ground" as he tried to snatch them from her hand. Femuels explained that while Woods was on the ground, he kneeled over her and straddled her. He denied hitting Woods, choking her, or threatening to kill her.

{¶8} The trial court found Femuels guilty. It sentenced him to 180 days in jail, with 150 of those days suspended. It additionally imposed a fine, court costs, and an 18-month period of community control.

### *Questioning by the Trial Court*

{¶9} In his first assignment of error, Femuels argues that the trial court abused its discretion by repeatedly interrupting the trial to ask the witnesses biased questions.

{¶10} Pursuant to Evid.R. 614(B), a trial court may interrogate witnesses in an impartial manner. *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.3d 1185, ¶ 70; *State v. Greenway*, 1st Dist. Hamilton No. C-160511, 2017-Ohio-7729, ¶ 6. A trial court's questioning of a witness is improper where the questions demonstrate bias on the part of the trial court. *Greenway* at ¶ 12. A biased question is one that exhibits "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open

state of mind which will be governed by the law and the facts." *Cepec* at ¶ 73, quoting *State ex rel. Pratt v. Weygandt,* 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus. In determining whether a trial court has exhibited bias, "[t]he threshold inquiry is whether, with reference to a range of acceptable, though not necessarily model, judicial behavior, the [trial] court's conduct falls demonstrably outside this range so as to constitute hostility or bias." *Id.* at ¶ 74, quoting *McMillan v. Castro,* 405 F.3d 405, 410 (6th Cir.2005).

{¶11} We typically review a trial court's interrogation of a witness for an abuse of discretion. *Greenway* at ¶ 6. An abuse of discretion "connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982). But where no objection is raised to the trial court's interrogation of a witness, we review for plain error. *Cepec* at ¶ 84; *State v. Payne*, 1st Dist. Hamilton No. C-060437, 2007-Ohio-3310, ¶ 13. A plain error is one that affects the outcome of the trial. *State v. Rosemond*, 1st Dist. Hamilton No. C-180221, 2019-Ohio-5356, ¶ 13.

{¶12} Femuels's assertion that the trial court interjected on multiple occasions to ask questions of the witnesses is accurate. In all but two of these instances, Femuels failed to object to the trial court's questions. Following our review of the record, we find no evidence of bias on the part of the trial court. Rather, the questions were asked in a neutral manner for the purposes of ascertaining what had transpired between Femuels and Woods in the breakroom and understanding the parties' relationship. Woods testified to one version of events, and Femuels to another. The court's questions were asked to assist it in discovering

what actually transpired between the parties. Further, we are mindful that the questions were asked in the context of a bench trial, where it is presumed that the trial court only considered relevant evidence. *See State v. Pettus*, 1st Dist. Hamilton No. C-170712, 2019-Ohio-2023, ¶ 44.

{¶13} The questions asked by the trial court did not indicate that it was partial to either party. "In absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the trial court acted with impartiality [in propounding to the witness questions from the bench] in attempting to ascertain a material fact or to develop the truth." *State v. Baston*, 85 Ohio St.3d 418, 426, 709 N.E.2d 128 (1999), quoting *Jenkins v. Clark*, 7 Ohio App.3d 93, 98, 454 N.E.2d 541 (2d Dist.1982).

{¶14} Finding no error or abuse of discretion in the trial court's questioning of the witnesses, we overrule the first assignment of error.

### *Ineffective Assistance of Counsel*

{¶15} In his second assignment of error, Femuels argues that his trial counsel rendered ineffective assistance.

{¶16} Counsel will not be considered ineffective unless her or his performance was deficient and caused actual prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Counsel's performance will only be deemed deficient if it fell below an objective standard of reasonableness. *Strickland* at 688; *Bradley* at 142. A defendant is only prejudiced by counsel's performance if there is a reasonable probability that the outcome of the proceeding would have been different but for the deficient performance. *Strickland* at

694; *Bradley* at 142. A reviewing court must indulge a presumption that counsel's behavior fell within the acceptable range of reasonable professional assistance. *Strickland* at 689; *Bradley* at 142.

{¶17} Femuels first argues that counsel was ineffective for failing to object to the bulk of the questions that the trial court asked. Having determined that the trial court's questions were asked in an unbiased and impartial manner in an effort to ascertain what had transpired, we cannot find that counsel performed deficiently by failing to object to these questions. And even if Femuels had cleared the first hurdle of establishing a deficient performance, we can find no prejudice where the questions were asked in a bench trial, there was no jury to have been influenced by the court's questions, and it is presumed that the court only considered relevant evidence. *See Pettus*, 1st Dist. Hamilton No. C-170712, 2019-Ohio-2023, at ¶ 44.

{¶18} Femuels further argues that counsel was ineffective for failing to object to the trial court's limitation of his testimony concerning comments that Woods made in the breakroom. Femuels had testified regarding the conversation that Woods overheard prior to their argument, and he attempted to testify as to comments that Woods made in reaction. The trial court prohibited him from repeating Woods's specific comments, but allowed him to testify that Woods was aggressive with him during their conversation. Femuels contends that counsel was ineffective for failing to object to the trial court's limitation of his testimony because the comments made by Woods were admissible as excited utterances pursuant to Evid.R. 803(2). He also argues that the trial court's limitation of his testimony violated his right to confrontation.

7

**{¶19}** We need not determine whether Woods's comments would have been admissible as excited utterances, because even if counsel had been deficient in failing to object to the trial court's limitation of Femuels's testimony, Femuels suffered no resulting prejudice. The comments that Femuels would have testified to did not concern the actual domestic-violence incident, but rather concerned Woods's mindset prior to the incident. And the court heard other evidence regarding Woods's mindset when Femuels testified that she was aggressive with him after overhearing his telephone conversation. We cannot say that the outcome of the proceedings would have been different had the trial court allowed Femuels to testify to Woods's comments. With respect to Femuels's assertion that the limitation of his testimony violated his right to confrontation, he has failed to explain how such a violation occurred, and we find his contention to be without merit.

**{¶20}** Femuels additionally argues that counsel was ineffective for failing to properly impeach Woods with evidence of a prior inconsistent statement under Evid.R. 613(B). In support of his argument, Femuels cites to a portion of the transcript in which he attempted to testify about a text message that Woods sent his children, from his phone, on the night before the domestic-violence incident. It appears that counsel wanted to introduce the content of the text message to counter Woods's previous testimony that Femuels had not been home on the night preceding the domestic-violence incident. The trial court did not allow Femuels to testify as to the content of the text message. We interpret Femuels's argument to be that counsel was ineffective for failing to use the text message to impeach Woods during her own testimony. But even if counsel could be considered ineffective for failing to impeach Woods, Femuels suffered no prejudice.

{¶21} The court heard extensive testimony about the injuries that Woods suffered, and it also heard testimony from two neutral witnesses that Femuels threatened to kill Woods. While a revelation that Woods had lied about Femuels's whereabouts the evening before the offense could have some bearing on her credibility, we cannot say that the outcome of the proceedings would have been different but for the fact that counsel failed to properly impeach Woods.

{¶22} The second assignment of error is overruled.

### *Limitation of Femuels's Testimony*

{¶23} In his third assignment of error, Femuels argues that the trial court erred by impermissibly limiting his testimony. In support of his argument, he cites portions of the transcript in which the trial court prohibited him from testifying about the text message that Woods sent to his children and prohibited him from testifying about the comments that Woods made in the breakroom after overhearing Femuels's telephone conversation. We review the trial court's exclusion of evidence for an abuse of discretion. *State v. Jones*, 1st Dist. Hamilton No. C-170647, 2020-Ohio-281, ¶ 30; *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.

{¶24} Following our review of the record, we find that the trial court abused its discretion in limiting Femuels's testimony on these topics. The statements attributable to Woods that Femuels sought to introduce were not hearsay, as they were not being offered for their truth, but rather to establish Woods's potential bias and motive to lie. *See State v. Devaughn*, 1st Dist. Hamilton No. C-180586, 2020-Ohio-651, ¶ 40; Evid.R. 801(C).

{¶25} Having found that the trial court abused its discretion, we must determine whether the trial court's limitation of Femuels's testimony was harmless error pursuant to Crim.R. 52(A). *Jones* at ¶ 37. Crim.R. 52(A) provides that a harmless error—which is an error that does not affect the defendant's substantial rights—shall be disregarded.

{¶26} Here, we find that any error resulting from the limitation of Femuels's testimony was harmless. While Femuels was prohibited from testifying as to the content of the text message that Woods sent his children, the trial court was aware that the message was sent and that Woods and Femuels argued over the fact that she sent it. And with respect to the comments that Woods made in the breakroom after overhearing Femuels's telephone conversation, the trial court heard testimony that Woods was aggressive with Femuels after overhearing the conversation and that Femuels had been told to find a different ride home. Much of the information that Femuels sought to convey via his testimony was presented to the court indirectly.

{¶27} Because the limitation of Femuels's testimony did not affect a substantial right and was harmless error, we overrule the third assignment of error.

### *Sufficiency of the Evidence*

{¶28} In his fourth assignment of error, Femuels contends that his conviction was not supported by sufficient evidence.

{¶29} In reviewing a challenge to the sufficiency of the evidence, this court must determine whether, after construing all reasonable inferences in favor of the state, any reasonable trier of fact could find that the state presented evidence to prove each of the essential elements of the offense beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶30} Femuels was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Femuels specifically contends that the state failed to establish that Woods was a "family or household member."

{¶31} R.C. 2919.25(F)(1)(b) provides that a family or household member is "[t]he natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." Woods's testimony that Femuels was the father of her child was sufficient to establish that Woods was a family or household member pursuant to R.C. 2919.25(F)(1)(b).

{¶32} As to the other elements, Woods testified that Femuels choked her, threw her to the floor, and threatened to kill her. She further testified that she felt as if her throat were being crushed and that she suffered pain to her ribs and right eye following the attack. Viewing this evidence in the light most favorable to the state, a reasonable trier of fact could have found that Femuels knowingly caused physical harm to Woods.

{¶33} We hold that Femuels's conviction for domestic violence was supported by sufficient evidence. The fourth assignment of error is overruled.

### *Sentencing*

{¶34} In his fifth assignment of error, Femuels argues that the trial court exhibited bias and sentenced him based on unproven and improper considerations. We review the imposition of a misdemeanor sentence for an abuse of discretion. *State v. Frazier*, 158 Ohio App.3d 407, 2004-Ohio-4506, 815 N.E.2d 1155, ¶ 15 (1st Dist.).

{¶35} R.C. 2929.21 sets forth the purposes of misdemeanor sentencing and applicable sentencing considerations. And R.C. 2929.22 sets forth various factors for the trial court to consider before imposing a misdemeanor sentence. "Where the trial court imposes a misdemeanor sentence within the statutory range for the offense, we presume that the trial court considered the appropriate misdemeanor-sentencing considerations set forth in R.C. 2929.21 and 2929.22." *State v. Brown*, 1st Dist. Hamilton No. C-140509, 2015-Ohio-2960, ¶ 10.

{¶36} Femuels contends that the trial court erred in allowing Woods to suggest what penalty should be imposed and in relying on allegations from Woods that had not been proven at trial when imposing sentencing. These allegations included an assertion that Woods had not known that Femuels was married until after they moved in together and that Femuels did not want her to become fat "like his wife." The trial court admonished Femuels for his behavior related to these allegations. Femuels asserts that the trial court's admonishments and comments, including the court's statement that "You act like an animal, you're going to be caged like an animal," demonstrated the court's bias and judgment on his lifestyle.

{¶37} Before imposing sentence, the trial court examined the victim-impact statement and allowed Woods to speak. This was entirely appropriate, as R.C. 2929.22(D)(1) provides that a sentencing court "shall consider any relevant oral or written statement made by the victim." We find that the trial court's comments at sentencing did not exhibit bias towards Femuels, but rather were a fair commentary on the facts proven at trial and the information in the victim-impact statement. The imposed sentence of 180 days in jail, of which 150 days were suspended, fell within the available statutory range for Femuels's conviction. *See* R.C. 2929.24(A)(1). We

therefore conclude that the trial court did not abuse its discretion in imposing sentence.

{¶38} The fifth assignment of error is overruled, and the judgment of the trial court is accordingly affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.